UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 19-11131-RGS

MARK G. DOWGIEWICZ

v.

THE TOWN OF WEBSTER, et al.

MEMORANDUM AND ORDER
ON DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS

November 7, 2019

STEARNS, D.J.

As the court observed in its decision on defendants' special motion to dismiss, the legal battle being fought in this case

> falls into a depressingly familiar category of a small-town intra-governmental political feud, here involving a former member of the Town of Webster's Board of Selectmen, Mark Dowgiewicz (the plaintiff), and defendants – the Town itself, Timothy Bent, the former Webster Chief of Police, and Pamela Leduc, the former Webster Town Administrator . . . . The pleadings are riddled with allegations of discrimination, nepotism, racism, retaliation, libel, slander, financial impropriety, and intimidation. As best as can be determined from the pleadings, the quarrel began over the refusal of the defendants to hire Dowgiewicz's [future] son-in-law as a Town police officer. Broadly read, the Complaint alleges that when plaintiff objected to what he (in his role as a Selectman) perceived to be discriminatory hiring practices on the part of the Town in passing over his soon-to-be son-in-law (alleged to be a "minority"), the defendants embarked on a campaign of harassment and retaliation against him.

The Complaint alleges violations of Title VII, 42 U.S.C. § 2000 *et seq.*; the federal Civil Rights Act, 42 U.S.C. § 1983; the Massachusetts Anti-Discrimination in Employment Act, Mass. Gen. Laws ch. 151B (Chapter 151B); and the Massachusetts Whistleblowers Statute, Mass. Gen. Laws ch. 149, § 185; broken into thirteen separate counts asserted individually against the Town, former Chief Bent, and former Town Administrator Leduc. The court previously denied the defendants' SLAPP motion. In that order, the parties were asked to identify those documents deemed appropriate for consideration on defendants' Fed. R. Civ. P. 12(c) motion for judgment on the pleadings.[1] *See Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007) ("The court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice."), quoting *R.G. Fin. Corp. v. Vergara-Nuñez*, 446 F.3d 178, 182 (1st Cir. 2006).

In response to the court's order, the parties by way of a letter dated October 29, 2019, indicated that, with the exception of a report of investigation and a hearing officer's decision concerning an alleged violation

---

[1] I also noted that the denial of the SLAPP motion should not be construed by either side as an intimation of my views of the merits of the underlying litigation.

of a citizen's civil rights by a Webster police officer, they were in agreement with respect to the numerous other exhibits previously submitted to the court. While I think the defendants have the better of this argument, neither of the disputed exhibits is necessary to this decision. Rather I rely for the most part on the factual allegations set out in the pleadings and plaintiff's October 9, 2019 supporting affidavit.

Rule 12(c) permits "a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed," as long as the motion does not delay the trial. Fed. R. Civ. P. 12(c). A Rule 12(c) motion differs from a Rule 12(b)(6) motion in that it implicates the pleadings as a whole. "In the archetypical case, the fate of such a motion will depend upon whether the pleadings, taken as a whole, reveal any potential dispute about one or more of the material facts." *Gulf Coast Bank & Trust Co. v. Reder*, 355 F.3d 35, 38 (1st Cir. 2004).

The thirteen counts of the Complaint divide into three basic categories: (1) those based on alleged discrimination in employment; (2) those based on alleged retaliation by Bent and Leduc against plaintiff in response to the exercise of his First Amendment rights; and (3) a claim against the Town for "whistleblower" retaliation. The employment discrimination claims are

framed on federal Title VII regarding the Town and Massachusetts Chapter 151B regarding the individual defendants. Central to these claims is the allegation set out in paragraph 1 of Dowgiewicz's affidavit, specifically: "For the past 19 years I have served on the Webster Board of Selectman where I am minimally compensated $3200 annually; in that capacity the Town of Webster is my employer."[2] Beginning with that premise, Dowgiewicz states that he "was subjected to an adverse employment action . . . causally linked to [his] protected conduct," that is, his public complaints about the Town's allegedly discriminatory practices and civil rights violations. Pl's Br. at 7. As a result of the sustained three-year campaign of adverse retaliatory harassment undertaken by the defendants, Dowgiewicz alleges that it "became difficult, if not impossible, for [him] to perform his job. *Id*. at 8.

The problem with the employment-based counts of the Complaint is that Dowgiewicz's fundamental premise is wrong. An elected selectman of a town is not an employee and the Supreme Judicial Court (SJC) has specifically so held. *See Bruno's Case*, 340 Mass. 420 (1960). In that case, a selectman for the Town of Athol who was injured while officially

---

[2] The claim that plaintiff is employed by the Town of Webster is repeated in the Charge of Discrimination that he filed with the Massachusetts Commission Against Discrimination and the EEOC. *See* Dkt # 23-1.

"perambulating" the Town's borders filed a claim for workers' compensation. The claim was rejected on grounds that the claimant was not an employee. On appeal, the SJC agreed with the reviewing board even though the claimant was paid a regular salary by the Town and a special stipend for performing the perambulating duty.

> It was agreed that in addition to their regular pay as selectmen, which amounted to $11.26 weekly, the selectmen received an additional $10 for perambulating. This fact, however, did not alter the character of the duty which the claimant was performing as an elected public officer. He had no contract of hire with the town and did not meet that requirement of the definition of "employee" in the workmen's compensation act: "every person in the service of another under any contract of hire, express or implied, oral or written." G. L. c. 152, § 1 (4). He was not subject to the direction and control of anyone, but was himself in joint charge of the performance of an official duty.

*Id.* at 421 (internal citation omitted).

The powers and duties conferred on selectmen by state law are those more of an employer than an employee. Among others, selectmen control the personal and real property of the town for which they are elected, Mass. Gen. Laws ch. 40, § 3; exercise the power of eminent domain, Mass. Gen. Laws ch. 40, § 14; designate public ways in the town, Mass. Gen. Laws ch. 82, § 38; conduct investigations of the operation of town departments, Mass. Gen. Laws ch. 41, § 23B; and oversee aspects of the town employees'

retirement program, Mass. Gen. Laws ch. 32, § 28(2)(a). *See generally* D. A. Randall et al., 18 Mass. Pract. Series § 6.3 (Board of Selectmen – Duties and Powers) (5th ed. 2019).

The conclusion that a salaried selectman does not qualify as an employee under Chapter 151B is reinforced by a reading of the statute itself, and more particularly, the omission by the Legislature of any definition of the term "employer" or "employee" that would expand on the common law meaning of a master-servant relationship. The First Circuit has explicitly so held in interpreting both Chapter 151B and Title VII.

> The parties do not cite, and our research has not revealed, any Massachusetts decisions interpreting the term "employer" under ch. 151B in a context similar to this case. However, in interpreting ch. 151B, Massachusetts courts follow federal case law construing analogous provisions of federal antidiscrimination law. *See Wheatley v. Am. Tel. & Tel. Co.,* 418 Mass. 394 (1994). Therefore, we look to federal decisions interpreting the term "employer" under federal antidiscrimination statutes.
>
> In *Lopez v. Massachusetts,* 558 F.3d 69 (1st Cir. 2009), we recently interpreted the term "employer" under Title VII of the Civil Rights Act of 1964. We noted that Supreme Court precedent has "established that when a statute contains the term 'employee' but does not define it, a court must presume that Congress has incorporated traditional agency law principles for identifying 'master-servant relationships.'" *Id.* at 83. Under the common law test, "'the relevant factors defining the master-servant relationship focus on the master's control over the

6

servant." *Id.* at 84 (quoting *Clackamas Gastroenterology Assocs., P.C. v. Wells,* 538 U.S. 440, 448 (2003)).

*Barton v. Clancy*, 632 F.3d 9, 18 (1st Cir. 2011). In *Barton*, the Court rejected a disability harassment and discrimination suit brought by a discharged school basketball coach against the Mayor of the City of Lynn, principally on grounds that the Mayor, lacking the authority to hire or fire school athletic coaches, could not be deemed the plaintiff's employer for Chapter 151B purposes.

The same reasoning applies here. Neither the Town nor the two defendant public officials named in Dowgiewicz's Complaint had the essential attribute of an employer – the ability to hire or discharge (or even discipline) the plaintiff. Under the Town of Webster's form of government, only the voters had that power. Consequently, judgment on the pleadings must be granted as to the employment discrimination claims, Counts I, II, III, IV, VI, VII, VIII, X, XI, and XII.

Count V, which alleges "whistleblower" retaliation, falls to the same defect. Under the Massachusetts Whistleblower Statute, "[a]n employer shall not take any retaliatory action [including discharge or suspension] against an employee because the employee . . . [d]iscloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of

7

the employer . . . that the employee reasonably believes is in violation of a law . . . ." Mass. Gen. Laws ch. 149, § 185(b)(1). Consequently, to plead the elements of the Statute, a plaintiff must plausibly allege that: (1) he objected to an activity, policy or practice that he reasonably believed was in violation of a law, rule or regulation; (2) that his refusal to participate in the activity played a substantial or motivating part in the decision to impose suspension or discharge; and (3) that the retaliatory action caused him damages. *Cf. Larch v. Mansfield Mun. Elec. Dep't*, 272 F.3d 63, 67 (1st Cir. 2001). Because Dowgiewicz cannot establish an employment relationship with any of the defendants, he cannot claim the protections of the Statute.

On the other hand, a section 1983 retaliation case based on the First Amendment does not require a showing of an employment relationship or an adverse impact on the terms and conditions of a plaintiff's employment. *See Barton*, 632 F.3d at 26. The focus is rather on whether the defendants' actions were intended to have a chilling effect on Dowgiewicz's speech concerning matters of public import, here the alleged discriminatory practices of the Town and by extension its officials. *Cf. Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968). As these claims are adequately pled against Bent and Leduc, Counts IX and XIII will

survive the instant motion.

ORDER

For the foregoing reason, all Counts against defendants except Counts IX and XIII are DISMISSED.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE